## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE<br><br>                         Plaintiff,<br><br>               v.<br><br>GUESS, INC.; GUESS? RETAIL, INC.; and<br>GUESS FACTORY,<br><br>                         Defendants. | Case No. _____ |

## <u>COMPLAINT</u>

### <u>PARTIES</u>

1.      Plaintiff, John Doe, age 26, is an adult individual and current resident of the Commonwealth of Pennsylvania, who currently resides in the City of Philadelphia at

███████████████████████████████████████████.

2.      Defendants, Guess, Inc.; Guess? Retail, Inc.; and/or Guess Factory, at all times relevant hereto, employed the Plaintiff at The Outlets at Sands Bethlehem, located at 77 Sands Boulevard, # 233, Bethlehem, PA 18015.  Defendants have a corporate headquarters located at 1444 S. Alameda St., Los Angeles, CA 90021.

3.      Guess, Inc., is, upon information and belief, a multi-million dollar clothing brand and retailer selling apparel and fashion accessories including designer jeans, clothing, watches, jewelry, perfumes, bags, and shoes.

### <u>PRELIMINARY STATEMENT</u>

4.      Doe is an openly gay male.

5.      Doe began employment with Defendants, Guess, Inc.; Guess? Retail, Inc.; and/or Guess Factory (hereinafter collectively "Guess, Inc."), in or around July 2017, as a Sales

Associate.  Doe had extensive retail and sales experience and was qualified for his job.  Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

6.     Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in Gloucester, New Jersey, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, Pennsylvania.

7.     Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in Bethlehem, Pennsylvania, as the Assistant Store Manager, in December 2018, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.  The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

8.     Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.  One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis, including by intentionally ignoring Doe and turning in the complete opposite direction of Doe, because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.  Doe reported the misconduct to another Assistant Store Manager, and when there was no response, to the Store Manager herself, who also provided no adequate response.  Doe experienced further discrimination, harassment, and retaliation, as a result.

9.     Defendants' male employee who hated Doe on account of the fact Doe was gay, harassed and discriminated against Doe, then set Doe up for wrongful termination by falsely accusing Doe of sexual misconduct by digitally penetrating or "fingering" the male employee in the anus, which is not only untrue, but revolting and utterly preposterous on its face.  The Defendants' lies also constitute cruel and sadistic mistreatment of Doe.  The false accusation, in and of itself, is a form of sexual harassment, and constitutes rank discrimination.

10.    Afterward, Doe followed up and specifically denied the false accusation. Defendants then shifted the reasoning and stated to Doe that Doe was terminated for allegedly "breaking company policy," which Doe denies.

11.    Doe followed up with the representative for the HR department multiple times asking for clear or specific reasoning for Doe's termination, after the Defendants shifted the reasoning and stated that Doe was terminated for allegedly "breaking company policy."  Doe asked which policy Doe allegedly violated, if any, and Doe asked for clear or specific reasoning otherwise for his discharge.  Guess, Inc., did not provide any further response.  Doe requested this information multiple times from the HR department, and received no response.

12.    Defendants acted with an evil motive and reckless indifference to Doe's civil rights.

13.    Defendants destroyed Doe's reputation and future employment opportunities with a false accusation against Doe of allegedly "fingering" a male subordinate employee in the anus, which is untrue, revolting, and utterly preposterous on its face.

14.    Defendants' conduct was intentionally cruel, malicious, and sadistic.

15.    Defendants should be responsible for Doe's lost wages, benefits, and for impairing his future employment opportunities with a false and malicious accusation.

16.     Defendants caused Doe severe emotional distress and psychological trauma for which Doe also seeks compensatory damages.

17.     Defendants are subject to punitive damages for their misconduct.

18.     Shortly after Doe's discharge, he filed timely complaints with the Bethlehem Human Relations Commission, and the Pennsylvania Human Relations Commission.  Plaintiff received a notice of dismissal and right-to-sue from both agencies.

19.     On June 18, 2020, three (3) days after the Supreme Court of the United States' decision in <u>Bostock v. Clayton County, Georgia</u>, No. 17-1618, --- S. Ct. ---, 2020 WL 3146686 (U.S. June 15, 2020), Counsel for Defendants, John Michael Nolan, Esquire, e-mailed Plaintiff's Counsel, the following e-mail, "Given the Supreme Court's landmark decision, can we expect [Doe] to file suit on his Charge of Discrimination and related Bethlehem Human Relations Commission complaint?  Our underlying presumption is that [Doe] was waiting to file suit in anticipation of a decision from the Supreme Court on Title VII's applicability to LGBT rights." The rights of LGBT people should have never been infringed.  Doe files the instant lawsuit in this Court to seek redress for the blatant violation of his civil rights by Guess, Inc.

## JURISDICTION AND VENUE

20.     This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

21.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Doe's state-law claims as those claims arise out of the same set of operative facts as the federal claims.

22.     This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set

4

forth by the United States Supreme Court in <u>International Shoe Company v. State of</u>

<u>Washington</u>, 326 U.S. 310 (1945), and its progeny.

23.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants

reside in and/or conduct business in this judicial district, and because a substantial part of the

acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

24.     At all times relevant hereto, Defendants each employed fifteen (15) or more

persons for each working day in each of twenty (20) or more calendar weeks in the current or

preceding calendar year.

25.     Doe has exhausted all applicable administrative remedies and the pertinent notices

in this matter are collectively attached hereto as Exhibit "A."

**CLAIMS FOR RELIEF**

**COUNT I:**
**HARASSMENT/HOSTILE WORK ENVIRONMENT BASED ON SEXUAL**
**ORIENTATION AND/OR SEX IN VIOLATION OF TITLE VII OF THE CIVIL**
**RIGHTS ACT OF 1964, 42 U.S.C. § 2000<i>e</i>, <u>et seq.</u>**
**(Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)**

26.     All of the foregoing paragraphs are hereby incorporated as if the same were more

fully set forth herein at length.

27.     Doe was subjected to a cruel and sadistic hostile environment on account of his

sexual orientation and/or sex, to wit:

   a.     Doe is an openly gay male.

   b.     Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands

          Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to

          suffer ostracism, aversion, and isolation from the other male employees on

          account of Doe being openly gay.

c.    The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

d.    Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

e.    One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

f.    Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

g.    Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

h.    Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other

employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner with impunity.

i.       It became extremely difficult for Doe to do his job of supervising the other male employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

j.       On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

k.       The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

l.       This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

m.       Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in

protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

n.     Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

o.     Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

p.     On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false. Doe was subject to a false accusation of sexual abuse or misconduct purely on account of his sexual orientation.  Doe was falsely accused and unfairly stereotyped on account of the fact he is a gay man.  Something similar would not be assumed of a person in a supervisory role who is heterosexual, or who is *not* a gay male.  Doe was subject to a heinous form of bias.  The allegation was revolting and utterly preposterous on its face, as well as cruel and sadistic.

q.      On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

r.      On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated*," "*I feel respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi [Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

s.      On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

t.      Doe alleges that he was treated differently than another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

u.      Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

v.      Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

w.      According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

x.      At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe, even after his repeated requests for the same.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and

promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

**COUNT II:**
**WRONGFUL TERMINATION BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.**
**(Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)**

28.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

29.     Doe was wrongfully discharged/terminated on account of his sexual orientation and/or sex, to wit:

    a.     Doe began employment with the Defendants in July 2017 as a Sales Associate.

    b.     Doe had extensive retail and sales experience and was qualified for his job.

    c.     Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

    d.     Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in Gloucester, NJ, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, PA.

    e.     Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to

suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

f.      The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

g.      Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

h.      One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

i.      Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

j.      Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

k.      Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more
difficult for Doe to actually do his job as the Assistant Store Manager both in
terms of supervising Mr. Matar, and also with respect to supervising other
employees who witnessed Mr. Matar's insubordination toward Doe and who
believed they could act in the same manner.

l.      It became extremely difficult for Doe to do his job of supervising the other
employees in the store, and Doe spent an inordinate amount of his time attempting
to direct harassing and abusive male employees, who constantly disobeyed Doe or
ostracized Doe because they hated Doe on account of his sexual orientation.

m.      On one occasion, Doe recalls that Brittany LNU, one of the female subordinates
whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told
Doe that Mr. Matar did not like Doe.

n.      The same employee, Brittany, then also relayed on another occasion to Doe that
Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not
like Doe.

o.      This is not behavior with which heterosexual employees have to contend at work
and made it difficult if not virtually impossible for Doe to properly do his job of
supervising the employees in the store.

p.      Doe recollects that in or around early January 2019, Doe took aside time and
approached Jovani LNU, the other Assistant Store Manager, and asked Jovani
why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried
to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or
words to that effect, because Doe wanted Mr. Matar's behavior to stop

immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

q.    Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

r.    Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

30.    On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false.  Doe was subject to a false accusation of sexual abuse or misconduct purely on account of his sexual orientation.  Doe was falsely accused and unfairly stereotyped on account of the fact he is a gay man.  Something similar would not be assumed of a person in a supervisory role who is heterosexual, or who is _not_ a gay male.  Doe was subject to

a heinous form of bias.  The allegation was revolting and utterly preposterous on its face, as well as cruel and sadistic.

31.	On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

32.	On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated*," "*I feel respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi [Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

33.	On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

34.	Doe alleges that he was treated differently than similarly situated employees who were, upon information and belief, heterosexual, including, to wit:

a.     Another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

b.     Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

c.     Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

d.     According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

e.     At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe even after his repeated requests.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental

anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

### COUNT III:
### RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, et seq.
### (Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)

35.      All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

36.      The Defendants terminated Doe's employment in retaliation for his protected conduct/activity in the form of both Doe's rebuffs of harassment and discrimination by employees, and complaints of the same to management.  The facts which support this are as follows:

a.      Doe began employment with the Defendants in July 2017 as a Sales Associate.

b.      Doe had extensive retail and sales experience and was qualified for his job.

c.      Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

d.      Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in Gloucester, NJ, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, PA.

e.      Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

f.    The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

g.    Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

h.    One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people. Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

i.    Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

j.    Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

k.    Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner.

l.  It became extremely difficult for Doe to do his job of supervising the other employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

m.  On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

n.  The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

o.  This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

p.  Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

q.   Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

r.   Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

37.   On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false.  Defendants retaliated against Doe for his protected conduct/activity and provided pretextual and/or inconsistent reasoning for Doe's dismissal, to wit:

38.   On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

39.   On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated*," "*I feel respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi*

*[Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

40.    On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

41.    Doe also alleges that he was treated differently than similarly situated employees who were, upon information and belief, heterosexual and did not engage in protected conduct or activity, including the following:

   a.    Another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

   b.    Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

   c.    Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

d.      According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

e.      At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe even after his repeated requests.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

## COUNT IV:
### HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. §§ 951-963
### (Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)

42.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

43.     Doe was subjected to a cruel and sadistic hostile environment on account of his sexual orientation and/or sex, to wit:

a.     Doe is an openly gay male.

b.     Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

c.     The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

d.     Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

e.     One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

f.     Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

g.    Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

h.    Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner with impunity.

i.    It became extremely difficult for Doe to do his job of supervising the other male employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

j.    On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

k.    The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

l.    This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

m.     Doe recollects that in or around early January 2019, Doe took aside time and
       approached Jovani LNU, the other Assistant Store Manager, and asked Jovani
       why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried
       to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or
       words to that effect, because Doe wanted Mr. Matar's behavior to stop
       immediately, which it would not.  Doe believed he was being treated differently
       because he is gay and was seeking insight from Jovani LNU, who is not gay,
       about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in
       protected conduct/activity by reporting the harassment and discrimination to
       Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial
       capacity at Guess, Inc.

n.     Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's
       behavior continued unabated, because no remedial action whatsoever was taken
       on Doe's report of harassment and discrimination at that time.

o.     Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his
       report of harassment and discrimination, and did not receive a satisfactory
       response, Doe then approached Lola Choi, Store Manager, in or around January
       2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's
       directions, or words to that effect.  Doe believed he was being treated differently
       because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it
       to stop.

p.     On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human
       Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms.

Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false.  Doe was subject to a false accusation of sexual abuse or misconduct purely on account of his sexual orientation.  Doe was falsely accused and unfairly stereotyped on account of the fact he is a gay man.  Something similar would not be assumed of a person in a supervisory role who is heterosexual, or who is _not_ a gay male.  Doe was subject to a heinous form of bias.  The allegation was revolting and utterly preposterous on its face, as well as cruel and sadistic.

q.   On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

r.   On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated*," "*I feel respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi [Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

s.   On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*" Doe again did not receive any response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

t.   Doe alleges that he was treated differently than another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

u.   Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

v.   Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

w.   According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

x.      At no time was Mr. Matar corrected, disciplined, or terminated, while by

comparison, Doe was terminated based on a falsehood, and on account of pretext

for allegedly breaking a company policy, which alleged policy the Defendants

would not otherwise specify to Doe, even after his repeated requests for the same.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against

Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate

Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and

promotions Plaintiff would have received; compensatory damages for pain and suffering, mental

anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting

emotional trauma; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and

equitable/injunctive relief requiring Defendants to remove the false accusation of sexual

misconduct from Doe's personnel file, for Defendants to be required to provide a neutral

employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

**COUNT V:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION AND/OR**
**SEX IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT,**
**43 P.S. §§ 951-963**
**(Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)**

44.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were

more fully set forth at length herein.

45.     Doe was wrongfully discharged/terminated on account of his sexual orientation and/or

sex, to wit:

a.      Doe began employment with the Defendants in July 2017 as a Sales Associate.

b.      Doe had extensive retail and sales experience and was qualified for his job.

c.     Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

d.     Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in Gloucester, NJ, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, PA.

e.     Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

f.     The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

g.     Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

h.     One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

i.     Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who

were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior

occurred including in December 2018 and January 2019 specifically to Doe's

recollection.

j.      Mr. Matar would intentionally avoid Doe in person when Doe would approach,

would ignore Doe when Doe would speak, and would look directly away from

Doe, in the complete opposite direction, when Doe would so much as look in the

direction of Mr. Matar.

k.      Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more

difficult for Doe to actually do his job as the Assistant Store Manager both in

terms of supervising Mr. Matar, and also with respect to supervising other

employees who witnessed Mr. Matar's insubordination toward Doe and who

believed they could act in the same manner.

l.      It became extremely difficult for Doe to do his job of supervising the other

employees in the store, and Doe spent an inordinate amount of his time attempting

to direct harassing and abusive male employees, who constantly disobeyed Doe or

ostracized Doe because they hated Doe on account of his sexual orientation.

m.     On one occasion, Doe recalls that Brittany LNU, one of the female subordinates

whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told

Doe that Mr. Matar did not like Doe.

n.      The same employee, Brittany, then also relayed on another occasion to Doe that

Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not

like Doe.

o.     This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

p.     Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

q.     Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

r.     Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently

because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

46.     On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false.  Doe was subject to a false accusation of sexual abuse or misconduct purely on account of his sexual orientation.  Doe was falsely accused and unfairly stereotyped on account of the fact he is a gay man.  Something similar would not be assumed of a person in a supervisory role who is heterosexual, or who is _not_ a gay male.  Doe was subject to a heinous form of bias.  The allegation was revolting and utterly preposterous on its face, as well as cruel and sadistic.

47.     On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

48.     On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated*," "*I feel respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi [Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any

response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

49.     On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

50.     Doe alleges that he was treated differently than similarly situated employees who were, upon information and belief, heterosexual, including, to wit:

    a.     Another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

    b.     Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

    c.     Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

    d.     According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth

above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

e.   At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe even after his repeated requests.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

## COUNT VI:
## RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. §§ 951-963
### (Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)

51.   All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

52.   The Defendants terminated Doe's employment in retaliation for his protected conduct/activity in the form of both Doe's rebuffs of harassment and discrimination by employees, and complaints of the same to management.  The facts which support this are as follows:

a.   Doe began employment with the Defendants in July 2017 as a Sales Associate.

b.      Doe had extensive retail and sales experience and was qualified for his job.

c.      Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

d.      Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in Gloucester, NJ, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, PA.

e.      Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

f.      The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

g.      Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

h.      One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

i.      Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

j.      Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

k.      Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner.

l.      It became extremely difficult for Doe to do his job of supervising the other employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

m.      On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

n.      The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

o.      This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

p.      Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

q.      Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

r.      Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January

2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

53.     On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false.  Defendants retaliated against Doe for his protected conduct/activity and provided pretextual and/or inconsistent reasoning for Doe's dismissal, to wit:

54.     On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

55.     On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated*," "*I feel respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi [Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

56.     On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

57.     Doe also alleges that he was treated differently than similarly situated employees who were, upon information and belief, heterosexual and did not engage in protected conduct or activity, including the following:

   a.     Another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

   b.     Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

   c.     Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

   d.     According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

e.      At no time was Mr. Matar corrected, disciplined, or terminated, while by

comparison, Doe was terminated based on a falsehood, and on account of pretext

for allegedly breaking a company policy, which alleged policy the Defendants

would not otherwise specify to Doe even after his repeated requests.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against

Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate

Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and

promotions Plaintiff would have received; compensatory damages for pain and suffering, mental

anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting

emotional trauma; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and

equitable/injunctive relief requiring Defendants to remove the false accusation of sexual

misconduct from Doe's personnel file, for Defendants to be required to provide a neutral

employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

**COUNT VII:**
**HOSTILE WORK ENVIRONMENT/HARASSMENT BASED ON SEXUAL ORIENTATION**
**AND/OR SEX IN VIOLATION OF THE CITY OF BETHLEHEM HUMAN RELATIONS AND**
**NON-DISCRIMINATION ORDINANCE,**
**ORD. NO. 2011-13, ART. 145.01-145.09**
**(Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)**

58.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were

more fully set forth at length herein.

59.     Doe was subjected to a cruel and sadistic hostile environment on account of his sexual

orientation and/or sex, to wit:

a.      Doe is an openly gay male.

b.      Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands

Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to

suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

c.     The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

d.     Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

e.     One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

f.     Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

g.     Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

h.      Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner with impunity.

i.      It became extremely difficult for Doe to do his job of supervising the other male employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

j.      On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

k.      The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

l.      This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

m.      Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop

immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

n.      Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

o.      Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

p.      On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies the allegation and contends it is false.  Doe was subject to a false accusation of sexual abuse or misconduct purely on account of his sexual orientation.  Doe was falsely accused and unfairly stereotyped on account of the fact he is a gay man.  Something similar would not

be assumed of a person in a supervisory role who is heterosexual, or who is <u>not</u> a gay male.  Doe was subject to a heinous form of bias.  The allegation was revolting and utterly preposterous on its face, as well as cruel and sadistic.

q.  On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being terminated for what she said was "breaking company policy," although there was no explanation as to specifically why Doe was being terminated or what specific policy Doe had violated, even though Doe asked.

r.  On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm, "*Lola talked to me on the phone and told me that I was terminated for 'breaking company policy,' there was no explanation to specifically why or what policy I violated,*" "*I feel respectfully that this is discrimination against me because I am openly gay,*" and, "*What Fadi [Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any response to this e-mail.  Doe did not receive any further reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

s.  On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any response to this e-mail.  Doe again did not receive

any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

t.   Doe alleges that he was treated differently than another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

u.   Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

v.   Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

w.   According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

x.   At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe, even after his repeated requests for the same.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

**COUNT VIII:**
**WRONGFUL DISCHARGE/TERMINATION BASED ON SEXUAL ORIENTATION AND/OR SEX IN VIOLATION OF THE CITY OF BETHLEHEM HUMAN RELATIONS AND NON-DISCRIMINATION ORDINANCE, ORD. NO. 2011-13, ART. 145.01-145.09**
**(Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess? Retail, Inc.; and Guess Factory)**

60.　　All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

61.　　Doe was wrongfully discharged/terminated on account of his sexual orientation and/or sex, to wit:

a.　　Doe began employment with the Defendants in July 2017 as a Sales Associate.

b.　　Doe had extensive retail and sales experience and was qualified for his job.

c.　　Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

d.　　Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in

Gloucester, NJ, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, PA.

e.  Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

f.  The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

g.  Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

h.  One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

i.  Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

j.      Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

k.      Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner.

l.      It became extremely difficult for Doe to do his job of supervising the other employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

m.     On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

n.     The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

o.     This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

p.      Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

q.      Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

r.      Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

62.    On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being

suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies

the allegation and contends it is false.  Doe was subject to a false accusation of sexual abuse or

misconduct purely on account of his sexual orientation.  Doe was falsely accused and unfairly

stereotyped on account of the fact he is a gay man.  Something similar would not be assumed of

a person in a supervisory role who is heterosexual, or who is _not_ a gay male.  Doe was subject to

a heinous form of bias.  The allegation was revolting and utterly preposterous on its face, as well

as cruel and sadistic.

63.     On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being

terminated for what she said was "breaking company policy," although there was no explanation

as to specifically why Doe was being terminated or what specific policy Doe had violated, even

though Doe asked.

64.     On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm,

"_Lola talked to me on the phone and told me that I was terminated for 'breaking company_

_policy,' there was no explanation to specifically why or what policy I violated_," "_I feel_

_respectfully that this is discrimination against me because I am openly gay_," and, "_What Fadi_

_[Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to_

_get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory_

_to say I 'fingered' him just because he knows that I happen to be gay._"  Doe did not receive any

response to this e-mail.  Doe did not receive any further reply regarding the clear and specific

reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

65.     On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human

Resources, again stating, "_Just following up on my prior email, that I sent last week.  What is the_

_reason [] for [my] termination, what policy was broken?_"  Doe again did not receive any

response to this e-mail.  Doe again did not receive any reply regarding the clear and specific reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

66.     Doe alleges that he was treated differently than similarly situated employees who were, upon information and belief, heterosexual, including, to wit:

    a.    Another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

    b.    Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

    c.    Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

    d.    According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

    e.    At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe even after his repeated requests.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

## COUNT IX:
### RETALIATORY DISCHARGE/TERMINATION IN VIOLATION OF THE CITY OF BETHLEHEM HUMAN RELATIONS AND NON-DISCRIMINATION ORDINANCE, ORD. NO. 2011-13, ART. 145.01-145.09
### (Plaintiff, John Doe v. Defendants, Guess, Inc.; Guess?, Inc.; Guess Retail, Inc.; and Guess Factory)

67.     All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

68.     The Defendants terminated Doe's employment in retaliation for his protected conduct/activity in the form of both Doe's rebuffs of harassment and discrimination by employees, and complaints of the same to management.  The facts which support this are as follows:

      a.     Doe began employment with the Defendants in July 2017 as a Sales Associate.

      b.     Doe had extensive retail and sales experience and was qualified for his job.

      c.     Doe performed his job commendably and to Defendants' satisfaction for almost two (2) years prior to his wrongful discharge.

      d.     Doe had been accepted into the Defendants' Future Leader Program, and was promoted twice, including in February 2018 to Assistant Store Manager in

Gloucester, NJ, and in December 2018 to a full-time Assistant Store Manager position in Bethlehem, PA.

e.  Shortly after Doe arrived at the Guess, Inc. store located at The Outlets at Sands Bethlehem, in December 2018, as the Assistant Store Manager, Doe began to suffer ostracism, aversion, and isolation from the other male employees on account of Doe being openly gay.

f.  The male employees were subordinate employees whom Doe was supposed to supervise as the Assistant Store Manager at the location in question.

g.  Doe's male subordinate employees turned the complete opposite direction or intentionally ignored Doe, acting as if they were completely disgusted with Doe, hated Doe, and never wanted to be associated with, let alone supervised by, a man known to be gay.

h.  One of the subordinates, in particular, Mr. Fadi Matar, is believed to hate gay people.  Mr. Matar is male and, upon information and belief, heterosexual.  Mr. Matar immediately began to treat Doe with aversion and ostracism on a frequent and continuous basis because Mr. Matar hated Doe even though Doe was Mr. Matar's supervisor.

i.  Mr. Matar's behavior was noticeably different treatment than Mr. Matar afforded other heterosexual employees, including heterosexual female employees, who were either Mr. Matar's supervisors or co-employees.  Mr. Matar's behavior occurred including in December 2018 and January 2019 specifically to Doe's recollection.

j.     Mr. Matar would intentionally avoid Doe in person when Doe would approach, would ignore Doe when Doe would speak, and would look directly away from Doe, in the complete opposite direction, when Doe would so much as look in the direction of Mr. Matar.

k.     Mr. Matar's behavior toward Doe was humiliating for Doe, and made it more difficult for Doe to actually do his job as the Assistant Store Manager both in terms of supervising Mr. Matar, and also with respect to supervising other employees who witnessed Mr. Matar's insubordination toward Doe and who believed they could act in the same manner.

l.     It became extremely difficult for Doe to do his job of supervising the other employees in the store, and Doe spent an inordinate amount of his time attempting to direct harassing and abusive male employees, who constantly disobeyed Doe or ostracized Doe because they hated Doe on account of his sexual orientation.

m.     On one occasion, Doe recalls that Brittany LNU, one of the female subordinates whom Doe supervised, observed Mr. Matar's behavior toward Doe.  Brittany told Doe that Mr. Matar did not like Doe.

n.     The same employee, Brittany, then also relayed on another occasion to Doe that Jovani LNU, the other Assistant Store Manager, had said that Mr. Matar did not like Doe.

o.     This is not behavior with which heterosexual employees have to contend at work and made it difficult if not virtually impossible for Doe to properly do his job of supervising the employees in the store.

p.      Doe recollects that in or around early January 2019, Doe took aside time and approached Jovani LNU, the other Assistant Store Manager, and asked Jovani why Jovani felt that Mr. Matar acted or behaved as he did around Doe, and tried to solicit from Jovani what Doe could do to change Mr. Matar's behavior, or words to that effect, because Doe wanted Mr. Matar's behavior to stop immediately, which it would not.  Doe believed he was being treated differently because he is gay and was seeking insight from Jovani LNU, who is not gay, about how to get Mr. Matar's behavior toward Doe to stop.  Doe engaged in protected conduct/activity by reporting the harassment and discrimination to Jovani LNU, Assistant Store Manager, who is in a supervisory/managerial capacity at Guess, Inc.

q.      Following the discussion with Jovani LNU, Assistant Store Manager, Mr. Matar's behavior continued unabated, because no remedial action whatsoever was taken on Doe's report of harassment and discrimination at that time.

r.      Shortly after Doe approached Jovani LNU, Assistant Store Manager, about his report of harassment and discrimination, and did not receive a satisfactory response, Doe then approached Lola Choi, Store Manager, in or around January 2019.  Doe stated to Ms. Choi that Mr. Matar would not listen to or follow Doe's directions, or words to that effect.  Doe believed he was being treated differently because Doe is gay and Doe was trying to address Mr. Matar's behavior to get it to stop.

69.   On January 21, 2019, Lola Choi, Store Manager; Rosa Soriano, Human Resources; and Doe had a phone conversation, at which time Ms. Choi and Ms. Soriano said Doe was being

suspended, and said that Mr. Matar had accused Doe of "fingering" him in the anus.  Doe denies

the allegation and contends it is false.  Defendants retaliated against Doe for his protected

conduct/activity and provided pretextual and/or inconsistent reasoning for Doe's dismissal, to

wit:

70.     On January 28, 2019, Ms. Lola Choi called Doe to confirm that Doe was being

terminated for what she said was "breaking company policy," although there was no explanation

as to specifically why Doe was being terminated or what specific policy Doe had violated, even

though Doe asked.

71.     On February 1, 2019, Doe then e-mailed Ms. Soriano in Human Resources to confirm,

"*Lola talked to me on the phone and told me that I was terminated for 'breaking company*

*policy,' there was no explanation to specifically why or what policy I violated*," "*I feel*

*respectfully that this is discrimination against me because I am openly gay*," and, "*What Fadi*

*[Matar] is saying occurred sometime in December 2018, not recently, and I was just trying to*

*get past him in the back room.  I may have brushed him by accident but I feel it's discriminatory*

*to say I 'fingered' him just because he knows that I happen to be gay.*"  Doe did not receive any

response to this e-mail.  Doe did not receive any further reply regarding the clear and specific

reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

72.     On February 5, 2019, Doe followed up with another e-mail to Rosa Soriano, in Human

Resources, again stating, "*Just following up on my prior email, that I sent last week.  What is the*

*reason [] for [my] termination, what policy was broken?*"  Doe again did not receive any

response to this e-mail.  Doe again did not receive any reply regarding the clear and specific

reason Doe was being terminated, or the specific policy that Doe had allegedly violated.

73.     Doe also alleges that he was treated differently than similarly situated employees who were, upon information and belief, heterosexual and did not engage in protected conduct or activity, including the following:

a.      Another male sales associate/employee, Mr. Fadi Malak, who was not treated in the manner Doe was above.  Mr. Malak is male and believed to be heterosexual.

b.      Doe alleges that he was treated differently than male sales associate/employee, Mr. Fadi Matar, the harasser, who is male, and believed to be heterosexual.

c.      Doe also alleges, by comparison, that Mr. Matar did not treat other heterosexual employees – either his supervisors or co-employees – in the same hostile manner that Mr. Matar treated Doe, including, for example, Ms. Choi (female Store Manager); Jovani LNU (female Assistant Manager); Brittany LNU, a female sales associate/co-employee of Mr. Matar; or Mr. Fadi Malak, a male sales associate/co-employee of Mr. Matar.

d.      According to Doe, both Mr. Malak and Mr. Matar would allegedly frequently violate company policy by allegedly frequently arriving late.  They also violated the harassment and discrimination policy in their mistreatment of Doe as set forth above.  However, both Mr. Malak and Mr. Matar were retained, while Doe was wrongfully terminated/discharged.

e.      At no time was Mr. Matar corrected, disciplined, or terminated, while by comparison, Doe was terminated based on a falsehood, and on account of pretext for allegedly breaking a company policy, which alleged policy the Defendants would not otherwise specify to Doe even after his repeated requests.

**WHEREFORE**, Plaintiff, John Doe, demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime, benefits, bonuses, commissions, and promotions Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, embarrassment, severe emotional distress, and lasting emotional trauma; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring Defendants to remove the false accusation of sexual misconduct from Doe's personnel file, for Defendants to be required to provide a neutral employment reference for Doe, and for Defendants to provide an apology and a retraction to Doe.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  09/17/2020                      BY: _____

**JUSTIN F. ROBINETTE, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Tel:  (215) 944-6121
Fax: (215) 944-6124
E-mail: JustinR@ericshore.com

*Attorney for Plaintiff, John Doe*