**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

BRYAN BENEDICT,                                :
                          Plaintiff,           :
                                               :
          v.                                   :          No. 5:20-cv-4545
                                               :
GUESS, INC. GUESS? RETAIL, INC.                :
and GUESS FACTORY,                             :
                          Defendants.          :
_____

## O P I N I O N

**Defendants' Motion to Dismiss and to Compel Arbitration, ECF No. 10—GRANTED**

**Joseph F. Leeson, Jr.**                                      **January 5, 2021**
**United States District Judge**

## I.       INTRODUCTION

This is an employment discrimination action in which Plaintiff, Bryan Benedict, alleges

that he was subjected to a hostile work environment, discrimination, and eventual termination

from his position as an assistant manager of a retail store on account of his sexual orientation.

_See generally_ Plaintiff's Complaint ("Compl."), ECF No. 1.  Before the Court is Defendants'

motion to dismiss the Complaint and to compel arbitration based on the existence of an

enforceable arbitration agreement between Plaintiff and Defendants.  _See_ Defendants'

Memorandum in Support of their Motion to Dismiss and to Compel Arbitration ("Defs.' Mem."),

ECF No. 10-1.  For the reasons set forth below, Defendants' motion to dismiss and to compel

arbitration pursuant to the arbitration agreement is granted.

## II.    BACKGROUND

### A.    Facts alleged in the Complaint

Plaintiff is an openly gay male.  Compl. ¶ 4.  Plaintiff began employment with Defendants, Guess, Inc., Guess? Retail, Inc., and, Guess Factory (collectively, "Defendants"), as a sales associate in or around July 2017.  *Id*. ¶ 5.  Plaintiff states he had extensive retail and sales experience and was qualified for his position with Defendants.  *Id*.  In December 2018, Plaintiff was promoted to a full-time Assistant Store Manager position at the Guess, Inc. store in The Outlets at Sands in Bethlehem, Pennsylvania.  *Id*. ¶ 6.  Shortly after starting at the store, Plaintiff states he "began to suffer ostracism, aversion, and isolation from the other male employees on account of [ ] being openly gay."  *Id*. ¶ 7.  In particular, Plaintiff states his "male subordinate employees turned the complete opposite direction or intentionally ignored [him], acting as if they were completely disgusted with [him], hated [him], and never wanted to be associated with, let alone supervised by, a man known to be gay."  *Id*. ¶ 8.  Plaintiff states that he "reported the misconduct" of one disrespectful and insubordinate male employee in particular "to another Assistant Store Manager, and when there was no response, to the Store Manager herself, who also provided no adequate response."  *Id*.  He claims he "experienced further discrimination, harassment, and retaliation, as a result" of these reports.  *Id*.

According to the Complaint, the particular employee referenced above, "who hated [Plaintiff] on account of the fact [he] was gay, harassed and discriminated against [Plaintiff], then set [him] up for wrongful termination by falsely accusing [him] of sexual misconduct by digitally penetrating or 'fingering' the male employee in the anus."  Compl. ¶ 9.  This allegation was ostensibly the reason for Plaintiff's suspension on January 21, 2019, and his eventual termination on January 28, 2019.  *Id*. ¶ 26.  Plaintiff states this accusation was untrue, and "in

and of itself, is a form of sexual harassment, and constitutes rank discrimination." *Id*. ¶ 9. According to the Complaint, "[a]fterward[s], [Plaintiff] followed up and specifically denied the false accusation.  Defendants then shifted the reasoning and stated to [Plaintiff] that [he] was terminated for allegedly 'breaking company policy,' which [Plaintiff] denies." *Id*. ¶ 10.  Despite following up with a representative for the HR department multiple times and asking for clear or specific reasoning for his termination, Plaintiff states Defendants did not provide any further response. *Id*. ¶ 11.

Based upon these averments, Plaintiff asserts claims for hostile work environment, wrongful termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Rights Act, and the City of Bethlehem Human Relations and Non-Discrimination Ordinance.

### B.    Procedural background

Plaintiff filed his Complaint on September 17, 2020.  *See* ECF No. 1. At the same time, Plaintiff also filed a motion to proceed anonymously.  *See* ECF No. 2.  On October 6, 2020, the Court issued an Order and Opinion denying Plaintiff's motion to proceed anonymously.  *See* ECF Nos. 7-8.

On November 16, 2020, Defendants filed the instant motion to dismiss the Complaint and to compel arbitration based on the existence of an arbitration agreement.  *See* ECF No. 10.  As of December 15, 2020, Plaintiff had failed to respond to Defendants' motion to dismiss. Consequently, on that date the Court issued an Order directing Plaintiff to respond to the motion or risk the motion being decided without consideration of any argument on Plaintiff's behalf. *See* ECF No. 11.  On the same date, December 15, 2020, Plaintiff filed a two-page response to Defendants' motion.  *See* ECF No. 12.

### III.    LEGAL STANDARD

#### A.    The framework for determining the correct standard

"The Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 1, *et seq.*, enables the enforcement

of a contract to arbitrate, but requires that a court shall be 'satisfied that the making of

the agreement for arbitration . . . is not in issue' before it orders arbitration." *Guidotti v. Legal*

*Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013).  A motion to dismiss

premised on the existence of an enforceable arbitration agreement may be reviewed under one of

two standards depending on the circumstances underlying the motion:  the standard for dismissal

pursuant to Federal Rule of Civil Procedure 12(b)(6)—the rule under which Defendants' motion

here is brought—or the standard for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  On this point, the Third Circuit has explained as follows:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon
> in the complaint, that certain of a party's claims are subject to an enforceable
> arbitration clause, a motion to compel arbitration should be considered under a Rule
> 12(b)(6) standard without discovery's delay.  But if the complaint and its supporting
> documents are unclear regarding the agreement to arbitrate, or if the plaintiff has
> responded to a motion to compel arbitration with additional facts sufficient to place
> the agreement to arbitrate in issue, then the parties should be entitled to discovery
> on the question of arbitrability before a court entertains further briefing on [the]
> question.

*Id.* at 776 (internal citations and quotations omitted); *see Singh v. Uber Techs. Inc.*, 939 F.3d

210, 216 (3d Cir. 2019).  Where limited discovery is required, the appropriate mechanism for

deciding the issue of arbitrability is summary judgment.  *R & C Oilfield Servs., LLC v. Am. Wind*

*Transp. Grp., LLC*, 447 F. Supp. 3d 339, 345 (W.D. Pa. 2020).

Here, Defendants attach to their motion to dismiss a copy of the arbitration agreement

they claim requires Plaintiff to arbitrate his claims.  Defendants contend that the question of

arbitrability under the agreement is appropriately decided under the Rule 12(b)(6) standard,

stating as follows:

> [T]hese considerations are straightforward.
>
> There is a valid agreement to arbitrate attached hereto as Exhibit "A". It was digitally signed by Plaintiff on July 26, 2017 and sets forth the agreement to arbitrate claims with Guess?, Inc. and it's [sic] subsidiary and affiliated companies – the Defendants in this matter. The Agreement contains valid consideration – "The promises of the parties herein to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other." The Court may also take notice that the signing of the Agreement by Plaintiff on July 26, 2017 coincides with Plaintiff's allegation in the Complaint that he began employment with Defendants in or around July 2017.
>
> The merits-based dispute set forth in the Complaint is within the scope of the Agreement. Plaintiff has agreed to arbitrate disputes arising out of, or in any way related to, the termination of the employment relationship or any allegation of unlawful discrimination, retaliation, or harassment – including claims involving discrimination, retaliation, or harassment based on sex under federal, state, or other government law, statute, regulation, or ordinance. This clearly encompasses Plaintiff's claims under Title VII, the Pennsylvania Human Relations Act, and the City of Bethlehem Human Relations and Non-Discrimination Ordinance.

Defs.' Mem. at 4-5.

Plaintiff does not state a position as to which standard—Rule 12(b)(6) or Rule 56—is

appropriate here. The entirety of Plaintiff's response to Defendants' motion states as follows:

> This Court ordered Plaintiff to file a Response to Defendant's Motion.
>
> Plaintiff respectfully disagrees and he does not consent.[1]
>
> This is the first Defense Counsel has specifically raised this arbitration agreement to Plaintiff's Counsel's attention or attached it for Plaintiff's Counsel's review.
>
> Defense Counsel from Jackson Lewis previously misled Plaintiff's Counsel asking if Plaintiff's Counsel was waiting for a Supreme Court decision on Title VII's "applicability to LGBT rights," then if Plaintiff's Counsel was going to file in the Middle or the Eastern District of Pennsylvania. As a result, Plaintiff's Counsel filed in this Court, after the Supreme Court made Title VII applicable to LGBT rights. Now, Defense Counsel springs an arbitration argument on Plaintiff.

---

[1]     It is unclear to what Plaintiff "does not consent."

This has all been to Plaintiff's detriment. Plaintiff, respectfully, was outed in this case beyond an extent he was comfortable. His Motion to Proceed Anonymously was denied, and he was given an extremely short time period to appeal this issue on an interlocutory basis, or lose his lawsuit. Plaintiff chose to move forward with his name despite his fear in order to stand up for himself and his community. Plaintiff outed himself beyond an extent he was comfortable. Only then this arbitration agreement was specifically raised.

Plaintiff has gained no benefit of any bargain to an arbitration process. Plaintiff has been forced by Defendant to expend and waste resources in this Court. Plaintiff was outed beyond an extent he was comfortable, and denied the privacy afforded by an arbitration process. The docket in this matter will be available, and this matter has gained unnecessary news publicity, despite Plaintiff declining to comment. Plaintiff respectfully disagrees and he does not consent.

Plaintiff's Opposition ("Pls.' Opp'n."), ECF No. 12, at 1-2.

As an initial matter, "although [Plaintiff's] Complaint[ ] makes no mention of the [arbitration agreement], that fact does not foreclose operation of a Rule 12(b)(6) standard." *Sorathia v. Fidato Partners, LLC*, No. CV 19-4253, 2020 WL 5121473, at *3 (E.D. Pa. Aug. 31, 2020).  Precluding review of a complaint under the Rule 12(b)(6) standard simply because a plaintiff has avoided reference to an existing arbitration agreement would frustrate the purpose of the FAA:  to facilitate expedited resolution of disputes where the parties to a contract have opted for arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (observing "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts").  Therefore, the Court will consider the arbitration agreement attached to Defendants' motion notwithstanding the absence of any reference to the agreement in Plaintiff's Complaint. This approach is consistent with the approach taken by other courts in this district under similar circumstances. *See, e.g*., *Sorathia*, 2020 WL 5121473, at *3 (considering an arbitration clause despite plaintiff failing to reference it in the complaint where "Defendants have attached the Employment Agreement to their Motion to Compel Arbitration, Plaintiff does not dispute she

received and signed the Employment Agreement containing the arbitration clause, and neither party has referenced additional facts beyond those set out in the Complaints and Employment Agreement"); *Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) ("We are not compelled to apply a summary judgment standard because Ms. Asberry-Jones failed to mention the Arbitration Agreement in her complaint. Indeed, we cannot envision a plaintiff choosing to file a complaint in federal court will affirmatively plead the existence of an arbitration provision. The purposes of the Act would be frustrated 'if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints.'" (quoting *Hewitt v. Rose Grp.*, No. CV 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016))).

Upon consideration of the arbitration agreement submitted by Defendants and the arguments put forward by both parties, the Court can find no dispute about the existence, authenticity, or enforceability of the arbitration agreement between Plaintiff and Defendants. Plaintiff does not dispute that he entered into the arbitration agreement. Nor has he raised any argument or factual assertions that would place the existence or authenticity of the arbitration agreement in dispute. Indeed, Plaintiff has stated *nothing* about the validity or authenticity of the arbitration agreement beyond counsel's unawareness of its existence. The absence of *any* argument regarding the existence, authenticity, or enforceability of the agreement is significant. *See Joaquin v. Directv Grp. Holdings, Inc.*, No. CV 15-8194, 2016 WL 4547150, at *3 (D.N.J. Aug. 30, 2016) ("Here . . . Plaintiff has not stated specific facts sufficient to put the agreements to arbitrate at issue. Specifically, Plaintiff 'has not produced any affidavits to support her claim' that she did not assent to the arbitration provisions. Additionally. . . Plaintiff has not come

forward with any evidence in response to Defendants' motion to compel arbitration to trigger the summary judgment standard. . . . Plaintiff does not unequivocally deny having received the DIRECTV Customer Agreement or Verizon Internet Terms of Service . . . .") (internal citations omitted); *see also Hewitt*, 2016 WL 2893350, at *2 ("Here, there is no lack of clarity regarding the agreement to arbitrate, and Plaintiff has not produced any additional facts sufficient to place the agreement to arbitrate at issue."); *Morina v. Neiman Marcus Grp., Inc.*, No. CIV.A. 14-1394, 2014 WL 4933022, at *8 (E.D. Pa. Oct. 1, 2014) ("In this case, Plaintiff responded to Defendant's Motion to Dismiss and Compel Arbitration with additional facts in the form of a sworn affidavit, but these additional facts are not sufficient to place the 2007 Agreement to arbitrate in issue, nor do they trigger the application of *Guidotti*'s framework of additional discovery followed by summary judgment review.").  Moreover, the arbitration agreement as submitted by Defendants was executed by Plaintiff on July 26, 2017, which is consistent with Plaintiff's allegation that he began his employment with Defendants "in or around July 2017." Compl. ¶ 5.

Under these circumstances, the absence of any genuine dispute as to the existence, authenticity, or enforceability of a binding arbitration agreement between Plaintiff and Defendants requires the Court to apply the Rule 12(b)(6) dismissal standard in the absence of discovery, rather than the Rule 56 summary judgment standard following discovery.

### B.     The Rule 12(b)(6) standard

"A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *R & C Oilfield Servs., LLC*, 447 F. Supp. 3d at 344 (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).  The Court's task in deciding a motion to dismiss brought under Rule 12(b)(6) for failure to state a claim is to determine the

following:  whether, based upon the facts as alleged, which are taken as true, and disregarding

legal contentions and conclusory assertions, the complaint states a claim for relief that is

plausible on its face in light of the claim's necessary elements.  *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009); *see id*. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)); *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2

(M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set

out sufficient factual matter to show that its claims are facially plausible."); *see Connelly v. Lane*

*Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  This standard, commonly referred to as the

"plausibility standard," "is not comparable to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556-57).  It is only where the "[f]actual allegations . . . raise a right to

relief above the speculative level" that the plaintiff has stated a plausible claim.[2]  *Phillips v. Cty.*

*of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

 In adjudicating a Rule 12(b)(6) motion, the scope of what a court may consider is

necessarily constrained:  a court may "consider only the complaint, exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  *United States v. Gertsman*, No. 15

8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt*

*Resolution*, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013)).  A court adjudicating a Rule 12(b)(6)

---

[2] As the Supreme Court has observed, "[d]etermining whether a complaint states a
plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw
on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679

motion may also take judicial notice of certain undisputed facts. *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

## IV.   DISCUSSION

### A.   The substance of the parties' arbitration agreement

The arbitration agreement between Plaintiff and Defendants provides, in relevant part, as follows:

> It is the desire of the parties to this Agreement that, whenever possible, disputes relating to employment matters will be resolved in an expeditious manner. Each of the parties hereto is voluntarily entering into the Agreement in order to gain the benefits of a speedy, impartial dispute-resolution procedure. The Company and Associate mutually agree that any dispute or controversy arising out of or in any way related to any Dispute, as defined herein, shall be resolved exclusively by a single neutral arbitrator. The Company and Associate agree that this Agreement and their relationship involve interstate commerce and agree that, except as specifically provided herein, the Federal Arbitration Act ("FAA") shall govern all proceedings arising out of or relating to this Agreement.

> For purposes of this Agreement, the term "Disputes" means and includes any claim or action arising out of or in any way related to; (a) any contract of employment between the parties; or (b) the termination of the employment relationship between the parties; or (c) any allegation of unlawful discrimination, retaliation or harassment. The potential Disputes, which the parties agree to arbitrate, pursuant to this Agreement, include but are not limited to:

> - Claims for wages or other compensation due; ·
> - Claims for breach of any employment contract or covenant (express or implied); ·
> - Claims for unlawful discrimination, retaliation or harassment (including, but not limited to, claims based on race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability); ·
> - Claims for employment benefits (except where an associate benefit or pension plan contains a claims procedure which expressly provides for a final and binding arbitration procedure different from this one), ·
> - Disputes arising out of or relating to the termination of the employment relationship between the parties, whether based on common law or statute, including claims based on violation of any federal, state or other governmental law, statute, regulation, or ordinance.

> Each of the parties voluntarily and irrevocably waives any and all rights to have any Dispute heard or resolved in any forum other than through arbitration as

provided herein. This waiver specifically includes, but is not limited to, any right
to trial by jury.

ECF No. 10-2 at 1 of 3.

### B.   Plaintiff's claims fall within the scope of the arbitration agreement

"[I]n deciding whether a party may be compelled to arbitrate under the FAA," the Court

must "first consider '(1) whether there is a valid agreement to arbitrate between the parties and,

if so, (2) whether the merits-based dispute in question falls within the scope of that valid

agreement.'" *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century*

*Indem. Co. v. Certain Underwriters at Lloyd's, London,* 584 F.3d 513, 527 (3d Cir. 2009)).  In

determining whether a dispute falls within the scope of a valid and enforceable arbitration

agreement, the Court keeps in mind the FAA's strong presumption in favor of arbitration.  *See*

*Century Indem. Co*., 584 F.3d at 526; *Myers v. Credit One Bank, N.A.*, No. CV 16-5214, 2017

WL 3727339, at *2 (E.D. Pa. Aug. 30, 2017) ("The FAA 'establishes a strong policy in favor of

compelling arbitration over litigation . . . .'" (quoting *Sandvik AB v. Advent Int'l Corp*., 220 F.3d

99, 104 (3d Cir. 2000))).

The first part of the Court's inquiry—whether there is a valid and enforceable agreement

to arbitrate here—has already been answered in the affirmative.  In the Court's view, there can

be no doubt that the second part of the inquiry—whether the underlying dispute between Plaintiff

and Defendants falls within the scope of that agreement—must also be answered in the

affirmative.  Specifically, Plaintiff's Complaint asserts claims for hostile work environment,

wrongful termination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, the

Pennsylvania Human Rights Act, and the City of Bethlehem Human Relations and Non-

Discrimination Ordinance, based upon his sexual orientation.  These claims fall squarely within

the arbitration agreement's provision regarding "[c]laims for unlawful discrimination, retaliation

or harassment (including, but not limited to, claims based on race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability)."  Plaintiff makes no argument, nor is there any argument available of which the Court is aware, supporting the position that Plaintiff's discrimination claims are not covered by the plain and unambiguous language of the parties' valid and enforceable arbitration agreement.  *Cf. Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 483 (D. Del. 2010) ("[T]hough [plaintiff] might wish public policy to preclude waiver of an individual's right to a judicial forum for statutorily protected rights, his sentiment is at odds with authority. The Supreme Court has made clear that statutory claims may in fact be subject to arbitration.") (collecting cases); *Monfared v. St. Luke's Univ. Health Network*, 182 F. Supp. 3d 188, 193 (E.D. Pa. 2016) ("'It is well established that arbitration is merely a choice of dispute resolution and does not infringe upon statutory protections.' For this reason, 'arbitration is to offer claimants the full scope of remedies available under Title VII.'" (quoting *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir.2003))), *aff'd*, 767 F. App'x 377 (3d Cir. 2019).

## V.   CONCLUSION

For the reasons set forth above, the Court finds that (1) Plaintiff and Defendants are parties to a valid and enforceable arbitration agreement, and (2) the claims asserted in Plaintiff's Complaint fall squarely within the scope of that agreement.  Therefore, Defendants' motion to dismiss Plaintiff's Complaint and to compel arbitration is granted.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge